**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

JAMES L. DALEY, JR.

        Debtor

Case No.  10-34110

**M E M O R A N D U M**

APPEARANCES:    LAW OFFICES OF MAYER & NEWTON
    John P. Newton, Jr., Esq.
    1111 Northshore Drive
    Suite S-570
    Knoxville, Tennessee  37919
    Attorneys for Debtor

    HOLIFIELD & ASSOCIATES, PLLC
    Al Holifield, Esq.
    8351 East Walker Springs Lane
    Suite 303
    Knoxville, Tennessee  37923

    MOSTOLLER, STULBERG, WHITFIELD & ALLEN
    Ann Mostoller, Esq.
    136 South Illinois Avenue
    Suite 104
    Oak Ridge, Tennessee  37830
    Attorneys for Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Trustee's Objection to Debtor's Claim of Exemption filed by Ann Mostoller, Chapter 7 Trustee, on November 11, 2010, as amended by the Amended Objection to Debtor's Claim of Exemption filed on May 10, 2011, objecting to the Debtor's claimed exemption in a Merrill Lynch Individual Retirement Account (Merrill Lynch IRA) in the amount of $61,646.00. In support of her Objection, the Trustee argues that the Debtor engaged in a prohibited transaction causing the Merrill Lynch IRA to lose its tax exempt status, thus precluding the Debtor from claiming it exempt under Tennessee and bankruptcy law. The Debtor opposes the Trustee's Objection, arguing that the Merrill Lynch IRA is a qualified IRA and denying that he engaged in a prohibited transaction.

Having determined that an evidentiary hearing was not necessary and that all issues could be decided upon stipulations and briefs, the parties, as required by the Scheduling Order entered on June 23, 2011, filed a Stipulation of Facts and Documents on July 8, 2011, followed by an Amended Stipulation of Facts and Documents, which was filed on July 20, 2011. The Trustee filed her Brief in Support of Trustee's Objection to Debtor's Claim of Exemption on July 22, 2011, and the Debtor's Brief in Response to Trustee Objection to Exemptions was filed by the Debtor on August 5, 2011. Oral argument was heard on September 29, 2011.

As set forth in the Scheduling Order, the issues to be decided from the Debtor's perspective are:

    a. Whether the [Merrill Lynch] IRA is qualified under the applicable IRS Code section;

    b. If the [Merrill Lynch] IRA is not "qualified" under the applicable IRS Code section, is the Debtor entitled to allowance of the exemption claims for the

Merrill Lynch IRA account under [Tennessee Code Annotated § 26-2-105(b) and 11 U.S.C. § 522(b)(3)(C)]; and

c. If the [Merrill Lynch] IRA account is "qualified" under the IRS Code, is the exemption allowed under [Tennessee Code Annotated § 26-2-105(b) and 11 U.S.C. § 522(b)(3)(C)].

From the Trustee's perspective, the issues are:

a. Whether the Debtor engaged in a prohibited transaction as defined in 26 U.S.C. § 4975 regarding the [Merrill Lynch] IRA?

b. If a prohibited transaction did occur under 26 U.S.C. § 4975, does the [Merrill Lynch] IRA lose its status as an IRA under 26 U.S.C. § 408 and is no longer tax exempt?

c. If the [Merrill Lynch] IRA is no longer exempt under 26 U.S.C. § 408 may the Debtor claim an exemption allowed under T.C.A. § 26-2-105(b) and 11 U.S.C. § 522(b)(3)(C)?

# I

The following facts are not in dispute. The Debtor filed the Voluntary Petition commencing his bankruptcy case under Chapter 7 on August 25, 2010. At that time, he held an interest in a Merrill Lynch IRA, account number 56614488, which he valued in his Schedule B at $61,646.00 and which he claimed exempt on his Schedule C, as amended on June 14, 2011. STIPS. at ¶ 1. In establishing the Merrill Lynch IRA, the Debtor executed a Merrill Lynch Client Relationship Agreement on May 16, 2008, completing the section of the Client Relationship Agreement entitled "For SEP/Simple Account Only" and designating the Account Type as a rollover. STIPS. at ¶ 2; EX. A. Per a determination letter from the Internal Revenue Service dated September 23, 2003, the Merrill Lynch IRA "satisfies the requirements of Code section 408[.]" STIPS. at ¶ 5; COLL. EX. D.

The Merrill Lynch IRA is the only account applied for by the Debtor on May 16, 2008, and is the only account that he holds with Merrill Lynch. STIPS. at ¶ 6. The Debtor did not fill out the section of the Client Relationship Agreement entitled "Accounts: CMA, Beyond Banking, CMA SubAccount, or IIA" and did not check any of the "Decline Margin Lending" boxes included within the Accounts section of the Merrill Lynch Client Relationship Agreement. EX. A. Similarly, he did not complete the section entitled "UTMA or UGMA." EX. A. The Debtor has never borrowed any funds from the Merrill Lynch IRA, which is self-directed, nor has he ever requested advancement of a margin loan against his funds. STIPS. at ¶ 7; Ex. C at 8 [82].

## II

Pursuant to 11 U.S.C. § 541, the Debtor's bankruptcy estate, inclusive of all property and interests in property owned by him, was created when he filed the Voluntary Petition. Nevertheless, Section 522 of the Bankruptcy Code provides the statutory authority for claiming exemptions in property, stating, in material part:

> (b)(1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. In joint cases filed under section 302 of this title . . . one debtor may not elect to exempt property listed in paragraph (2) and the other debtor elect to exempt property listed in paragraph (3) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (2), where such election is permitted under the law of the jurisdiction where the case is filed.
>
> (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> (3) Property listed in this paragraph is—

  (A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place; [and]

  (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law[.]

11 U.S.C. § 522. Under subsection (b)'s "opt out" provision, a number of states, including Tennessee, require debtors to use their exemptions rather than the federal exemptions enumerated in § 522(d). *See* TENN. CODE ANN. § 26-2-112 (2000).[1] Additionally, § 522(b) was impacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, including, as material to this contested matter, the addition of subsections (b)(3) and (b)(4) to expand the scope of exemptions for qualifying retirement funds beyond an exemption under any state law.

  Property that is exempt "is subtracted from the bankruptcy estate and not distributed to creditors . . . [to ensure that a debtor] retains sufficient property to obtain a fresh start and to provide the debtor with the basic necessities of life so that he will not be left entirely destitute by his

---

[1] **Exemptions for the purpose of bankruptcy**. — The personal property exemptions as provided for in this part, and the other exemptions as provided in other sections of the Tennessee Code Annotated for the citizens of Tennessee, are hereby declared adequate and the citizens of Tennessee, pursuant to section 522(b)(1), Public Law 95-598 known as the Bankruptcy Reform Act of 1978, Title 11 USC, section 522(b)(1), are not authorized to claim as exempt the property described in the Bankruptcy Reform Act of 1978, 11 USC 522(d).

TENN. CODE ANN. § 26-2-112 (2000); *see also Rhodes v. Stewart*, 705 F.2d 159, 161-62 (6th Cir. 1983) (holding that Tennessee's "opt-out" statute is constitutional).

creditors." *In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003) (quoting *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 792 (E.D. Tenn. 1998)).  Accordingly, exemptions are determined as of the date upon which the bankruptcy case is commenced, are construed liberally in favor of debtors, and "should be construed in light of the purpose for which [they are] created." *Lebovitz v. Hagemeyer (In re Lebovitz)*, 360 B.R. 612, 618-19 (B.A.P. 6th Cir. 2007); *In re Chapman*, 424 B.R. 823, 826 (Bankr. E.D. Tenn. 2010).  Any party in interest may object to a debtor's claimed exemptions, *see* FED. R. BANKR. P. 4003, and as the objecting party, the Trustee bears the burden of proof by a preponderance of the evidence that the Debtor's exemption in the Merrill Lynch IRA has been improperly claimed; however, if she fails to carry the burden of proof, the exemption will retain its prima facie presumption of correctness and will stand.  *In re Garbett*, 410 B.R. 280, 284 (Bankr. E.D. Tenn. 2009).

As the bases for exempting the Merrill Lynch IRA, the Debtor relies upon Tennessee Code Annotated § 26-2-105(b), which provides that "any funds or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan which is qualified under §. . . 408 . . . are exempt from any and all claims of creditors of the participant or beneficiary, except the state of Tennessee[,]" and 11 U.S.C. § 522(b)(3)(C), which exempts "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section . . . 408 . . . of the Internal Revenue Code of 1986."  Section 522(b)(4) provides that the following provisions are applicable to subsection (b)(3)(C):

> (A) If the retirement funds are in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition in a case under this title, those funds shall be presumed to be exempt from the estate.

6

>    (B) If the retirement funds are in a retirement fund that has not received a favorable determination under such section 7805, those funds are exempt from the estate if the debtor demonstrates that –
>
>    (i) no prior determination to the contrary has been made by a court or the Internal Revenue Service; and
>
>    (ii)(I) the retirement fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986; or
>
>    (II) the retirement fund fails to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986 and the debtor is not materially responsible for that failure.
>
>    (C) A direct transfer of retirement funds from 1 fund or account that is exempt from taxation under section . . . 408 . . . of the Internal Revenue Code of 1986 . . . shall not cease to qualify for exemption under paragraph (3)(C) . . . by reason of such direct transfer.

11 U.S.C. § 522(b)(4). The parties have stipulated that if the court finds the Merrill Lynch IRA not in substantial compliance with the Internal Revenue Code of 1986, the Debtor is not materially responsible for that failure. STIPS. at ¶ 4.

The Trustee grounds her Objection first upon the Debtor's failure to check the boxes declining the margin lending option in his Merrill Lynch Client Relationship Agreement and the terms set forth in Section 2 of the Terms and Conditions of the Merrill Lynch Client Relationship Agreement, entitled "Margin Lending," authorizing his securities to "be loaned to Merrill Lynch or loaned out to others[.]" *See* EX. A; EX. B at 9. The Trustee additionally argues that through Section 3 of the Terms and Conditions of the Merrill Lynch Client Relationship Agreement, entitled "Liens," which provides that "[a]ll of [the Debtor's] securities and other property in any account" are subject to a lien by Merrill Lynch, the Debtor engaged in prohibited transactions under 26 U.S.C. § 4975, thus causing the Merrill Lynch IRA to lose its qualifying status which, in turn, caused it to

7

lose its tax exempt status, and the Debtor therefore forfeited the right to claim an exemption under either Tennessee Code Annotated § 26-2-105(b) or 11 U.S.C. § 522(b)(3)(C). *See* EX. B at 10. On the other side, the Debtor argues that the IRS determination letter was in effect at the time he filed his bankruptcy petition, establishing that the Merrill Lynch IRA was qualified under the Internal Revenue Code, and that the Trustee has not overcome the presumption set forth in § 522(b)(4)(A). Additionally, the Debtor avers that he has not entered into any prohibited transactions and that, based upon custodial agreements governing the Merrill Lynch IRA, he did not pledge his assets to Merrill Lynch.

There is no dispute that when the Debtor filed his bankruptcy case on August 25, 2010, Merrill Lynch had been issued a favorable determination letter under § 7805 of the Internal Revenue Code which related to the Merrill Lynch IRA. This letter, issued on September 23, 2003, provides in material part:

> Each individual who adopts this approved prototype will be considered to have an IRA that satisfies the requirements of Code section 408, provided the individual follows the terms of the approved prototype, does not engage in certain transactions specified in Code section 408(e), and, if the arrangement is a trust or custodial account, the trustee or custodian is a bank within the meaning of Code section 408(n) or has been approved by the Internal Revenue Service pursuant to Code section 408(a)(2).
>
> . . . .
>
> The Internal Revenue Service has not evaluated the merits of this IRA and does not guarantee contributions or investments made under the IRA. Furthermore, this letter does not express any opinion as to the applicability of Code section 4975, regarding prohibited transactions.

COLL. EX. D; STIPS. at ¶ 5. Under § 522(b)(4)(A), the determination letter being in place creates the presumption that the funds in the Merrill Lynch IRA are exempt. This presumption is, however,

8

rebuttable, and it is appropriate for the Trustee to present evidence "to establish that the IRA was improperly operated under applicable IRC provisions, thereby disqualifying the IRA funds from exempt status under § 522(b)(3)(C)." *In re Willis*, 2009 WL 2424548, at *7 (Bankr. S.D. Fla. Aug. 6, 2009), *aff'd, Willis v. Menotte,* 2010 WL 1408343 (S.D. Fla. Apr. 6, 2010). To that end, the Trustee contends that the Debtor engaged in prohibited transactions.

As set forth in the Internal Revenue Code, the following constitute prohibited transactions with respect to qualified pension plans:

> (1) **General rule**. – For purposes of this section, the term "prohibited transaction" means any direct or indirect –
>
> > (A) sale or exchange, or leasing, of any property between a plan and a disqualified person;
> >
> > (B) lending of money or other extension of credit between a plan and a disqualified person;
> >
> > (C) furnishing of goods, services, or facilities between a plan and a disqualified person;
> >
> > (D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;
> >
> > (E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or
> >
> > (F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

26 U.S.C. § 4975(c). A "disqualified person" under the prohibited transaction rules set forth above is defined as a "fiduciary" under 26 U.S.C. § 4975(e)(2)(A), which, in turn, is defined as any person who "exercises any discretionary authority or discretionary control respecting management . . . or

disposition of [the plan] assets." *See* 26 U.S.C. § 4975(e)(3)(A). Fiduciaries of an IRA include IRA owners who are, therefore, disqualified persons under 26 U.S.C. § 4975(e)(2)(A). *See Willis v. Menotte*, 2010 WL 1408343, at *7. The Debtor, as the owner of his self-directed Merrill Lynch IRA, qualifies as a disqualified person under 26 U.S.C. § 4975(e)(2)(A).

In support of her objection and arguments that the Debtor engaged in prohibited transactions, the Trustee relies upon the following language within the section entitled "Tax Certification and Acknowledgments" located at the bottom of the Merrill Lynch Client Relationship Agreement signature page stipulated as Exhibit A:

> BY SIGNING BELOW, I AGREE TO THE TERMS OF THE MERRILL LYNCH CLIENT RELATIONSHIP AGREEMENT ON THE REVERSE SIDE AND:
>
> 1. THAT, UNLESS I HAVE CHECKED "DECLINE MARGIN LENDING" IN THE "ACCOUNTS" SECTION ABOVE, MARGIN LOANS MAY BE EXTENDED TO ME FROM TIME TO TIME, AND CERTAIN OF MY SECURITIES MAY BE LOANED TO YOU OR LOANED OUT TO OTHERS, PURSUANT TO SECTION 3, PAGE 1 OF THE CLIENT RELATIONSHIP AGREEMENT AND THE APPLICABLE PARAGRAPH OF THE SECURITIES ACCOUNT AGREEMENT.

Ex. A. Similar language is found in the Tax Certification and Acknowledgments section of the more detailed and expanded version of the Merrill Lynch Client Relationship Agreement, which has been stipulated as Exhibit B. As further defined by the Merrill Lynch Client Relationship Agreement, Section 2 of the Terms and Conditions entitled "Margin Lending" provides that

> If any account is established with the margin lending service (formerly called the Investor CreditLine service), you understand and agree that:
>
> ▫ You may borrow money from Merrill Lynch secured by a pledge of your eligible securities and other property in your account;
> ▫ You will be charged interest on debit balances at a rate permitted by the laws of the state of New York;

10

    ▫ Certain of your securities may be loaned to Merrill Lynch or loaned out to others; and
    ▫ You are bound by the terms of the agreement for the Margin Lending service.

Ex. B at 9. Section 3 of the Merrill Lynch Client Relationship Agreement, entitled "Liens," provides that

> All of your securities and other property in any account – margin or cash – in which you have an interest, or which at any time are in your possession or under your control, shall be subject to a lien for the discharge of any and all indebtedness or any other obligations you may have to Merrill Lynch.
>
> You agree that Merrill Lynch holds all of your securities and other property as security for the payment of any such obligations or indebtedness to Merrill Lynch in any account in which you have an interest.
>
> Merrill Lynch, subject to applicable laws, may at any time and without giving you prior notice, use and/or transfer any or all securities and other property in any account in which you have an interest, without regard to Merrill Lynch having made any advances in connection with such securities and other property and without regard to the number of accounts you may have with Merrill Lynch. In enforcing the lien, Merrill Lynch, at its sole discretion, may determine which securities and other property are to be sold or which contracts are to be closed.

Ex. B at 10. "Securities and Other Property" is defined in the Client Relationship Agreement as "[f]or purposes of Margin Lending and Liens, 'securities and other properties' means, without limitation, money, securities, financial instruments and commodities of every kind and nature and related contracts and options." Ex. B at 10. The Merrill Lynch IRA is further governed by the terms set forth in the Merrill Lynch Traditional Individual Retirement Account (IRA) Disclosure and Custodial Agreement marked as stipulated Exhibit C.

    The court cannot agree with the Trustee that the Debtor's failure to mark the "Decline Margin Lending" box in the Accounts section of the Merrill Lynch Client Relationship Agreement constitutes his entry into a prohibited transaction. As evidenced by the executed Client Relationship

11

Agreement, the Debtor opened only an IRA rollover account and did not open any additional accounts of any type with Merrill Lynch. The fill-in-the-blanks signature page of the Merrill Lynch Client Relationship Agreement is clearly divided into three independent sections with the applicant to complete the section applicable to the type of account to be opened: the first section, designated "Accounts," is to be completed for "CMA, Beyond Banking, CMA SubAccount, or IIA" accounts; the second section is designated for "UTMA or UGMA" accounts; and the third section is designated for "SEP/Simple Account Only" and has application "Only" to retirement accounts, including an IRA rollover. The "Accounts" section containing the "Decline Margin Lending" boxes unambiguously states that "If you are opening a CMA account, a Beyond Banking account, CMA SubAccount, or an IIA account, please complete this section." The UTMA or UGMA account section also directs that "If you are opening a UTMA or UGMA account on behalf of a minor now, please complete this section." There are no corresponding "Decline Margin Lending" boxes in the second and third sections governing UTMA or UGMAs and SEP/Simple Accounts. Clearly, the Debtor was not required to fill out any portion of the "Accounts" type section on the Merrill Lynch Client Relationship Agreement, including the boxes labeled "Decline Margin Lending Program," because he was not opening a CMA, Beyond Banking, CMA SubAccount, or IIA account. The court is satisfied that the "Margin Lending" section discussed in the respective Client Relationship Agreements applies only to the CMA, Beyond Banking, CMA SubAccount, and IIA accounts and does not apply to the "SEP/Simple Account Only" section.

The parties have stipulated that the Debtor never borrowed from his IRA account or requested a margin loan against his funds. Nevertheless, under the Terms and Conditions section

of the Client Relationship Agreement, which applies to all of his accounts with Merrill Lynch, the Debtor expressly agreed that "Merrill Lynch has a lien on [his] accounts and amounts in those accounts for any payment obligations [he has] with Merrill Lynch[.]" *See* Ex. B at 9. This grant of a lien at the IRA's inception constituted an extension of credit or guarantee, which is a prohibited transaction under 26 U.S.C. § 4975(c)(1)(B). *See Janpol v. Comm'r*, 101 T.C. 518, 528 (1993) ("[T]he contract to make a loan is also prohibited as an extension of credit. . . . It is not enough to say . . . that there is a difference between a loan and a guarantee. The guarantee is, in effect, also a contract to make a loan to the trust. It cannot be avoided at the time of default on the ground that petitioners did not intend to engage in a loan transaction prohibited by section 4975(c). The potential for abuse has been set in motion by the contract, and thus the contract, the guarantee, is prohibited whether or not the condition for liability to the third party has arisen."). *See also Willis*, 2009 WL 2424548, at *8 ("Congress' goal in enacting § 4975 'was to bar categorically a transaction that was likely to injure the pension plan.' 'The structure of [section] 4975 reflects Congress' purpose not just to tax abusive transactions, but to eliminate the 'potentialities for abuse.'") (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993), and *Janpol*, 101 T.C. at 527 (quoting S. REP. NO. 93-383 (1974))). As incongruous as it appears, based upon the language of the Client Relationship Agreement signed by the Debtor, the mere opening of the Merrill Lynch IRA caused the Debtor to participate in a prohibited transaction under § 4975.

The Trustee also relies upon an advisory opinion dated October 27, 2009, from Louis J. Campagna, Chief, Division of Fiduciary Interpretations, Office of Regulations and Interpretations for the Department of Labor, to Timothy Berry of Gilbert, Arizona, stating that the granting of a

security interest in a client's personal, non-IRA accounts through language nearly identical to that found in Section 3 of the Terms and Conditions section of the Merrill Lynch Client Relationship Agreement for the purpose of covering the IRA's debts does constitute an extension of credit and is a prohibited transaction. Specifically, the advisory opinion states, in material part:

> You make the following representations in support of your request. Your client currently has a personal brokerage account at the Broker. He now wishes to open an IRA with the Broker, and will self-direct investments made with the IRA's assets.
>
> . . . .
>
> It is the opinion of the Department that the grant by an IRA owner to the Broker of a security interest in his non-IRA accounts in order to cover indebtedness of, or arising from, his IRA, as you describe, would be a prohibited transaction under Code section 4975(c)(1)(B).
>
> Code section 4975 sets forth a series of "prohibited transactions" involving a plan and a "disqualified person." Section 4975(e)(1), in pertinent part, defines the term "plan" to include an IRA, described in section 408(a) of the [Internal Revenue] Code. Section 4975(e)(2) defines "disqualified person," in relevant part, to include a fiduciary of the plan. Section 4975(e)(3) defines the term "fiduciary," in part, to include any person who exercises discretionary authority or control respecting management of such plan or exercises any authority or control regarding management or disposition of plan assets.
>
> Thus, your client, as an IRA owner who would self-direct the investments made by his IRA, would be a fiduciary and a disqualified person with respect to the IRA under [Internal Revenue] Code section 4975(e)(2) and would be subject to the restrictions imposed by section 4975(c)(1).
>
> Section 4975(c)(1)(B) prohibits the direct or indirect lending of money or other extension of credit between a plan and a disqualified person. The granting of a security interest in the IRA owner's personal accounts to cover indebtedness of, or arising from, the IRA constitutes such an extension of credit.
>
> . . . .
>
> Here, the requested granting of a security interest in the assets of the IRA owner's personal accounts to the Broker to cover the IRA's debts to the Broker is akin to a guarantee of such debts by the IRA owner. This would amount to an extension of

14

> credit from the IRA owner to the IRA. Thus, section 4975(c)(1)(B) prohibits the granting of such a security interest to the Broker.
>
> Nevertheless, the Department notes that to the extent that the situation you describe also would result in the granting by the IRA owner to the Broker of a security interest in the IRA's assets to cover the indebtedness of the IRA owner, prohibited transactions would likewise occur in violation of [Internal Revenue] Code sections 4975(c)(1)(B), (D), & (E) for the following reasons:
>
> First, granting such a security interest in the IRA's assets would amount to an extension of credit by the IRA to the IRA owner, a fiduciary and a disqualified person, and cause a violation of section 4975(c)(1)(B). Second, section 4975(c)(1)(D) prohibits the transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan. Thus, in granting the requested security interest in the IRA's assets, the IRA owner would be transferring or using the IRA's assets for his own benefit in violation of section 4975(c)(1)(D). Last, section 4975(c)(1)(E) prohibits a disqualified person who is a fiduciary from dealing with the income or assets of a plan in his own interest or for his own account. The IRA owner as a disqualified person would be using the IRA's assets "in his own interest or for his own account" in violation of section 4975(c)(1)(E).
>
> This letter constitutes an advisory opinion under ERISA Procedure 76-1, 41 Fed. Reg. 36281 (1976). Accordingly, this letter is issued subject to the provisions of that procedure, including section 10 thereof, relating to the effect of advisory opinions.

*Dep't of Labor Op. No. 2009-03A* at 1-3. Although not binding on the court,[2] the October 27, 2009 advisory opinion is nonetheless instructive and persuasive, particularly when read in conjunction with *Janpol* and *Willis*.

---

[2] The binding authority of an advisory opinion issued by the Department of Labor is set forth in Section 10 of ERISA Procedure 76-1 as follows:

> An advisory opinion is an opinion of the Department as to the application of one or more sections of the Act, regulations promulgated under the Act, interpretive bulletins, or exemptions. The opinion assumes that all material facts and representations set forth in the request are accurate, and applies only to the situation described therein. Only the parties described in the request for opinion may rely on the opinion, and they may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion.

41 FED. REG. 36281 (1976).

While it is undisputed that a favorable determination letter from the IRS was in place when the Debtor filed his bankruptcy case on August 25, 2010, stating that the Merrill Lynch IRA meets the requirements of an IRA under 26 U.S.C. § 408(a), the Trustee has offered proof sufficient to rebut the presumption set forth in § 522(b)(4)(A) afforded by the favorable determination. Through no fault of his own and notwithstanding the fact that between its creation and the filing date, the Debtor conducted no borrowing transactions against the Merrill Lynch IRA, the Debtor indirectly engaged in a prohibited transaction under 26 U.S.C. § 4975 simply by signing the Client Relationship Agreements granting Merrill Lynch a lien on all of his accounts. Accordingly, the Debtor is not entitled to an exemption in the Merrill Lynch IRA holding $61,646.00 from a rollover which occurred on May 16, 2008.

Finally, the Debtor argues that the Merrill Lynch IRA is protected by § 522(b)(4)(B), which provides that "[i]f the retirement funds are in a retirement fund that has not received a favorable determination under such section 7805, those funds are exempt from the estate if the debtor demonstrates that . . . (ii) . . . (II) the retirement fund fails to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986 and the debtor is not materially responsible for that failure." 11 U.S.C. § 522(b)(4). This section cannot benefit the Debtor because it applies only to a retirement fund that has not received a favorable determination under § 7805. Here, it is undisputed that the Merrill Lynch IRA is the product of a favorable determination letter issued pursuant to § 7805 of the Internal Revenue Code. *See* Ex. D.

In accordance with the above, the Debtor is not entitled to an exemption in the $61,646.00 in his Merrill Lynch IRA. An Order consistent with this Memorandum will be entered.

FILED: October 11, 2011

                                         BY THE COURT

                                         */s/ RICHARD STAIR, JR.*

                                         RICHARD STAIR, JR.
                                         UNITED STATES BANKRUPTCY JUDGE